UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. |
| WILLIAM SCHWARZE, | ) ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, William Schwarze, represented by defense counsel, Michelle Nasser, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri by Assistant United States Attorney, Hal Goldsmith. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the charge, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's scheme to defraud American Airlines and individuals relative to American Airlines' gift card program

1

during the period January, 2016 through October, 2018, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that a downward variance from the Total Offense Level is appropriate in this case, and the parties jointly recommend that this Court sentence defendant to a term of probation, with whatever conditions this Court deems appropriate under the circumstances.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statutes.

### 3. ELEMENTS:

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Section 1343 (Wire Fraud), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Defendant knowingly devised or knowingly participated in a scheme to defraud and to obtain money by means of material false or fraudulent pretenses or representations as detailed in the Information;

2. The pretenses or representations were material, that is, they would reasonably influence a person to part with money;

3. Defendant did so with the intent to defraud; and,

4. In advancing, or furthering, or carrying out his scheme to defraud and to obtain money by means of false or fraudulent pretenses or representations, Defendant transmitted a writing by means of a wire in interstate commerce or caused the transmission of a writing by means of a wire in interstate commerce.

### 4. FACTS:

2

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

American Airlines, Inc. (hereinafter referred to as "AA") is a major American airline company which operates commercial jetliners throughout the United States and globally. AA is headquartered in Fort Worth, Texas. As an accommodation to its customers, AA offers Gift Cards for purchase and redemption by the Gift Card holder for the purchase of AA airline tickets. AA Gift Cards may be purchased through a portal on the AA online website. The customer may purchase either actual plastic Gift Cards which are shipped to the customer or the customer's designee, or the customer may purchase "virtual" Gift Cards which are delivered to the customer or the customer's designee via email. Both the plastic Gift Cards and the virtual Gift Cards may be redeemed by the Gift Card holder for the purchase of AA airline tickets. Significantly, AA Gift Cards, per AA policy, whether plastic Gift Cards or virtual Gift Cards, are not refundable and cannot be returned to AA for cash or credit.

Once an AA airline ticket is purchased, the actual AA airline ticket may be refunded if the passenger can no longer take the flight, depending upon the specific ticket fare rules. If an AA airline ticket originally purchased with an AA Gift Card is refunded, in part or in whole, AA issues the customer a new Gift Card for the value of the refund. If an AA airline ticket originally purchased by credit card is refunded, in part or in whole, AA issues the credit directly back to the customer's credit card. Any refunds for airline tickets originally purchased by Gift Card are not to be credited to the customer's credit card, but are to be made solely by the issuance of a new Gift Card in the amount of the refund.

3

Defendant, **WILLIAM SCHWARZE** (hereinafter "**SCHWARZE**") resides in Ladue, Missouri, in the Eastern District of Missouri. Beginning during in or about January, 2016, **SCHWARZE**, using personal credit cards, purchased hundreds of AA virtual Gift Cards through the AA website, which he then redeemed via the internet for AA airline tickets for himself, his family members, and his friends and associates. **SCHWARZE** and his family members, friends and associates travelled hundreds of thousands of air miles on AA airliners through the redemption of his purchased AA Gift Cards, including to destinations such as Honolulu, Hong Kong, Beijing, Shanghai, Macao, Singapore, Seoul, Miami, San Francisco, Los Angeles and New York City. On many occasions, at **SCHWARZE's** direction, **SCHWARZE's** friends and associates paid him for the AA airline tickets he obtained for them, utilizing internet based pay systems such as Venmo and Zelle, as well as bank checks which **SCHWARZE** deposited into his personal bank account.

**SCHWARZE** represented to friends and associates that he was affiliated with a travel agency, and was going to build his own travel business. **SCHWARZE** also represented himself to be a travel agent through a website on the internet, boasting of his "elite airline and hotel statuses, which include Executive Platinum status with American Airlines and its worldwide partners – logging about 200,000 flight miles a year. My background allows me to optimize airline and hotel customer experience programs to build exceptional travel value for you."

Beginning in or about January 2016 and continuing through in or about October 2018, in the Eastern District of Missouri and elsewhere, the defendant, **WILLIAM SCHWARZE**, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from AA, in an approximate amount of $160,340.00, and from others, in an approximate amount

4

of $20,458.63, by means of materially false and fraudulent pretenses, representations, and promises.

On one and more occasions, **SCHWARZE** logged into the AA website, entered the AA Gift Card portal on that website, and purchased virtual AA Gift Cards using one of several credit cards to make the purchases. For example, as part of the scheme, during 2018 **SCHWARZE** purchased 690 virtual AA Gift Cards, in varied amounts ranging from $50 to $150, using his credit cards. It was a further part of the scheme that, after receiving the unique identifying number for each purchased AA virtual Gift Card, known as a miscellaneous sales receipt, or "MSR," **SCHWARZE** redeemed the virtual AA Gift Cards for AA airline tickets for travel for himself, his family members, or his friends and associates.

On one and more occasions, either before or after the actual flights were taken, **SCHWARZE** logged into the AA website, entered the AA Refund portal, and applied for a refund of the AA airline tickets which he had purchased with the virtual AA Gift Cards. Unbeknownst to AA, and as part of the scheme, **SCHWARZE** took advantage of a vulnerability in the AA refund system by entering the Gift Card MSR into the AA Refund portal, instead of the requested actual ticket identification number, causing the AA refund system to automatically refund the price of the airline ticket, minus any fees, directly to the credit card which **SCHWARZE** had originally used to purchase the virtual AA Gift Card. Through his scheme, **SCHWARZE**, or his family members, friends and associates, used the AA airline tickets purchased by **SCHWARZE** with AA virtual Gift Cards for their actual flights, but the cost of those flights was refunded to **SCHWARZE** by AA through a credit to **SCHWARZE's** credit cards. **SCHWARZE** received approximately $160,340.00 in refunds from AA for airline flights

that he, or his family members, friends and associates actually took. In addition to the funds obtained from AA through his fraudulent requests for refunds, on one and more occasions **SCHWARZE** directed friends and associates to pay him for the AA tickets he had obtained for them, but failed to advise them that he had obtained refunds from AA for the price of those tickets. **SCHWARZE** falsely represented that he was purchasing the AA tickets through his affiliation with a travel agency. These payments were made to **SCHWARZE** through internet based payment systems such as Venmo and Zelle, as well as by bank checks which **SCHWARZE** deposited into his personal bank account. **SCHWARZE** obtained approximately $20,458.63 from his friends and associates and used the funds for personal expenses, and to pay for personal charges on his credit cards, unrelated to any AA tickets.

On or about July 27, 2018, within the Eastern District of Missouri and elsewhere, for the purpose of executing his scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, by initiating a fraudulent refund transaction via the internet through the online American Airlines refund portal which caused American Airlines to issue a credit to **SCHWARZE**'s personal American Express credit card in the amount of $150.00.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than five (5) years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

10 levels should be added, pursuant to Section 2B1.1(b)(1)(F), because the loss exceeded $150,000 but was less than $250,000.

**b. Chapter 3 Adjustments:**

(1) Acceptance of Responsibility: The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Other Adjustment(s)/Disputed Adjustments:** None.

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 14.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

9

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A,

an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution, in the total amount of $180,798.63, to all victims of all charges in the information prior to, or at the time of sentencing.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

11

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has discussed the government's evidence, the government's case, and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position

13

supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

August 13, 2020
Date

HAL GOLDSMITH
Assistant United States Attorney

08-13-20
Date

WILLIAM SCHWARZE
Defendant

08/13/2020
Date

MICHELLE NASSER
Attorney for Defendant

14